# MARITIME SERVICES, INC.

P. O. BOX 3549, MOREHEAD CITY, NC 28557
Office: (252) 240-3928  Fax: (252) 240-0192
e-mail: MSI@ec.rr.com

October 30, 2004

Mr. Stevenson Weeks
Wheatly, Wheatly, Nobles, Weeks, Valentine & Lupton
710 Cedar Street
Beaufort, NC 28516

RE:  Civil Action NO. 4:04-CV-63-H2

I have been retained by Wheatley, Wheatley, Nobles, Weeks & Valentine, attorneys for Dr. George L. Walker, to review, evaluate and, if necessary, to render my expert opinions in the claims of injuries, arising out of an accident which occurred on or about August 24, 2002. Dr. Walker was reported to have been severely injured when he was struck by a vessel belonging to and operated by Sea Tow Services Carteret County and operated by their paid captain, Mr. Luke Midgett Jr.

With regards to my qualifications to give opinions in this matter, I have attached a list of my credentials to this report. In addition to the my qualifications, I am familiar with the area where the incident involving Dr. Walker and the Sea Tow vessel occurred, as I have transited the area by boat on many occasions.

I am being compensated for my services at the rate of one hundred dollars ($100.00) per hour.

EXHIBIT
1

I was furnished and have reviewed the following documents:

    A. Written statement of Dr. George L. Walker

    B. Sworn Deposition of Mr. Luke Bradshaw Midgett Jr. dated October 15, 2004.

    C. Sworn Deposition of Mr. Daniel Lee Sparks, dated October 15, 2004.

In addition to the above furnished information, I have reviewed the following additional information:

    D. NOAA chart # 11545

    E. Navigation Rules, COMDTINST M16672.2D

    F. COMCOGARDGRU FT MACON NC/NMN-37 Radio log 24 AUG 2002

    G. US Coast Guard Response Log, SAR: MEDEVAC-16FT CATAMARAN AND SEATOW 6 - CAPE LOOKOUT, NC Saturday, August 24, 2002.

    H. STATION FORT MACON CHRONO LOG, Date 24 AUG 24 02, CASE #: 116.

    I. US Coast Guard Message, P242252Z AUG 02 ZUI ASN-A05236000035.

    J. US Coast Guard SITREP ONE AND FINAL – SEA TOW SIX CAPSIZED IN THE SURF OFF CAPE LOOKOUT, NC. PERIOD: 241620Q AUG 02 TO 241751Q AUG 02

    K. US Coast Guard ATLANTIC AREA SEARCH AND RESCUE PLAN MEDICO / MEDEVAC CHECKSHEET 20152.

    L. US Coast Guard SAR INCIDENT SUMMARY, Unit case No. 116

    M. U. S. Coast Guard INCIDENT FORM, CAPSIZED CATAMARAN, 24 AUG02 1645

    N. NOAA CMAN Weather Station CLKN7 – Cape Lookout, NC 24 August 2002.

    O. Verbal interview by the undersigned with Dr. George Walker.

## OPINIONS:

It is my opinion, based upon my experience, training and a review of the above referred to materials that:

1. The accident occurred

The factual basis of my opinion is as follows:

(a) Written statement of Dr. George L. Walker

<u>Page 4 Para 3</u>: " *With all preparations made, Luke said, "OK- Go." I pushed off with my arms into the water feet first and at and angle away from the boat so as to not go too deep. When I surfaced, I took a breath and the boat was on me. I went under the side of the boat and was disoriented. I saw the bottom of the boat and felt a tug at my left leg and I think I came out the other side of the boat, having crossed from starboard to port under the boat. When I got oriented, the boat was about 25 feet in front of me facing away from me. I floated onto my back and raised my left leg to see what had happened. I saw a flap of tissue from a large gash in my upper calf.*"

(b) US Coast Guard Response Log, SAR: MEDEVAC-16FT CATAMARAN AND SEATOW 6 - CAPE LOOKOUT, NC Saturday, August 24, 2002.

<u>Page 1 line 20:21Zaug 02</u>: *"To SEATOW Capt. Of SEATOW – Luke Midgett- not injured but George Walker (owner of Catamaran) has severe cut on leg below the leg that won't stop bleeding and he's losing a lot of blood, Request help for leg."*

(c) US Coast Guard Message, P242252Z AUG 02 ZUI ASN-A05236000035.

<u>Part 1 C:</u> *"NARRATIVE: TOW BOAT U. S. ADVISED THEY OVERHEARD ON CH 12 THAT SEATOW SIX HAD CAPSIZED IN THE SURF WHILE ATTEMPTING TO RIGHT A CATAMARAN. GRU MADE CONTACT WITH SEATOW SIX AND THE CAPTAIN ADVISED ALL PERSONS WERE ACCOUNTED FOR BUT THE OWNER OF THE CATAMARAN HAD A BAD LACERATION BELOW HIS KNEE."*

2. That the accident occurred on Navigable waters of the United States

The factual basis of my opinion is as follows:

(a) NOAA chart # 11545

(b) US Coast Guard SAR INCIDENT SUMMARY, Unit case No. 116

Latitude: *"34⁰ 38.9N"*
Longitude: *"076⁰ 34 22"*

(c) U S Coast Guard INCIDENT FORM, CAPSIZED CATAMARAN, 24 AUG02 1645

POSITION: *"Latitude- 34⁰ 38.9N Longitude- 076⁰ 34.22W"*

3. That Luke Midgett was, at all times during this incident, the operator of the vessel SEATOW SIX

The factual basis of my opinion is as follows:

(a) U S Coast Guard Response Log, SAR: MEDEVAC-16FT CATAMARAN AND SEATOW 6 - CAPE LOOKOUT, NC Saturday, August 24, 2002.

<u>Page 1 line 20:21Zaug 02</u>: *" To SEATOW Capt. Of SEATOW – Luke Midgett- not injured but George Walker (owner of Catamaran) has severe cut on leg below the leg that won't stop bleeding and he's losing a lot of blood, Request help for leg."*

(b) US Coast Guard SITREP ONE AND FINAL – SEA TOW SIX CAPSIZED IN THE SURF OFF CAPE LOOKOUT, NC. PERIOD: 241620Q AUG 02 TO 241751Q AUG 02

<u>Page 1 Para E</u>: *"POB INFO: SEATOW CAPTAIN: LUKE MIDGETT, CATERMERAN CAPTAIN: GEORGE WALKER."*

(c) U S Coast Guard Response Log, SAR: MEDEVAC-16FT CATAMARAN AND SEATOW 6 - CAPE LOOKOUT, NC Saturday, August 24, 2002.

<u>Page 1 Heading 20:22Z 24 Aug02</u>: *"To SEATOW Capt of SEATOW-Luke Midgett-"*

4. That the injuries which were suffered by Dr. George Walker on or about August 24, 2001, when he was struck by the vessel SEATOW SIX and subsequently struck by the vessel propeller, resulted from the negligent operation of the vessel by Captain Luke Midgett Jr.

Captain Midgett placed Dr. Walker in harms way by allowing him to enter the water on the down wind side of the vessel with engine or engines running, in gear with the propeller or propellers turning. When Dr. Walker entered the water, the vessel was driven over top of him by the action of the wind and/or waves and thrust of the propeller or propellers.

Captain Midgett caused the injuries to Dr. Walker by instructing him to go overboard while the engine or engines of the SEA TOW vessel remained running and in gear with a turning propeller. Captain Midgett knew, or should have known, that the vessel would be pushed over the top of Dr. Walker by the wind and/or waves and engines. It is a basic principle known to all boaters, both professional and amateur, that you never place or leave an engine running in gear with swimmers in the water around the vessel.

Captain Midgett attempted to have a swimmer take a tow line through the surf while his vessel was continuing to maneuver. Correctly, the vessel should have been anchored outside the surf line to insure a stable platform from which to conduct the recovery operation. The engines should have been shutdown or in neutral prior to and during the time the swimmer was in the water near the vessel. Once the tow line was attached to the grounded vessel, the engines could then have been started or placed in gear and the anchor retrieved as the vessel and tow moved away from the surf.

The factual basis of my opinion is as follows:

(a)   Written statement of Dr. George L. Walker

> <u>Page 4 Para 2 lines 7 through 9</u>: *"I thought about my proximity to the outboards, but assumed they would be out of gear and not a major threat- just some hardware in the water to be avoided."*
>
> <u>Page 4 Para 3</u> : *"With all preparations made, Luke said, "OK-Go." I pushed off with my arms into the water feet first and at an angle away from the boat so as to not go too deep. When I surfaced, I took a breath and the boat was on me. I went under the side of the boat and was disoriented. I saw the bottom of the boat and felt a tug at my left leg and I think I came out the other side of the boat, having crossed from starboard to port under the boat."*

> Page 4 Para 6: *"I was still out beyond the breakers when from the top of a swell I saw Luke and his boat at the sand, sideways on the beach not far from my boat. I knew he would not be able to get his boat off the beach to help any more."*

(b) Verbal interview by the undersigned with Dr. George Walker.

(c) Sworn Deposition of Mr. Luke Bradshaw Midgett Jr. dated October 15, 2004.

Page 49 Lines 10 through 17:

*"Q. WAS THERE ANY REASON WHY YOU DID NOT ANCHOR THE VESSEL, AND CUT OFF BOTH ENGINES BEFORE YOU PUT A SWIMMER OVERBOARD?*

*A. WELL, I WOULD HAVE HAD A JOB BY MYSELF HEAVING THAT ANCHOR.*

*Q. SO YOU DIDN'T HAVE ENOUGH PEOPLE ON BOARD TO ANCHOR THE VESSEL?*

*A. WELL, IT WASN'T A PRACTICE."*

5. That the owners of the SEA TOW vessel were negligent in that the vessel was not adequately manned. The owners of the SEA TOW vessel were negligent in that they knew that their vessel was in route to a capsized vessel, but failed to provide a properly trained captain and a sufficient number of crewmen. This lack of a properly trained captain and sufficient crew was a major factor in this accident.

There was only Captain Midgett onboard the Sea Tow vessel when it arrived on scene. Captain Midgett attempted to recover a vessel which was stranded in the surf with no trained help onboard. His use of an untrained swimmer who was not outfitted with swim fins and unfamiliar with other needed equipment was negligent and reflects his lack of training by his employer.

The factual basis of my opinion is as follows:

(a) Written statement of Dr. George L. Walker

<u>Page 3 Para 1</u>: "At about the same time as I was handing the captain his phone, He said, "well here comes Sea-Tow." There was one man in a familiar yellow Sea-Tow center console inflatable with a hard center and twin outboards. He said he was searching and unable to locate the sailboat. We had run west for several minutes from my boat and the Sea-Tow captain was going east. The captain said that he had given GPS co-ordinates and could not understand why he could not find it or would be looking so far west. The captain of the Foolish Pleasure had to call the Sea-Tow boat closer to talk several times. He commented that the Sea-Tow captain needed to calm down and slow down to find out what was going on."

<u>Page 4 Para 1</u>: "Luke said that he could not take his boat in there and I laughed and agreed. I then said that I was not worn out and offered to swim a rope to the beach, right my boat, attach the line and Luke pull me and the sailboat off the beach. Luke agreed that was what needed to be done. Luke gave me an unfamiliar life vest to wear. It seemed to be mostly straps and heavy. I asked if it was flotation and he showed me tags to pull to inflate the vest and helped me get it on. I pulled some line off the windlass in the back of the boat and gave Luke my glasses in preparation for the swim. I wondered how much drag the rope would be as I swam and debated whether to take off my water shoes."

<u>Page 4 Para 3</u>: "With all preparations made, Luke said, "OK-Go." I pushed off with my arms into the water feet first and at an angle away from the boat so as to not go too deep. When I surfaced, I took a breath and the boat was on me. I went under the side of the boat and was disoriented. I saw the bottom of the boat and felt a tug at my left leg and I think I came out the other side of the boat, having crossed from starboard to port under the boat."

<u>Page 4 Para 6</u>: *"I was still out beyond the breakers when from the top of a swell I saw Luke and his boat at the sand, sideways on the beach not far from my boat. I knew he would not be able to get his boat off the beach to help any more."*

<u>Page 5 Para 3</u>: *"The first rescuers on the scene was another Sea-Tow boat. Luke said they had a diver. The diver, using fins swam a rope to the beach like I had planned."*

(b) Verbal interview by the undersigned with Dr. George Walker.

(c) Sworn Deposition of Mr. Daniel Lee Sparks, dated October 15, 2004.

<u>Page 8 Lines 3 through 8</u>:

"Q. TELL ME WHAT YOU RECALL REGARDING THE TELEPHONE CALL?

A. ESSENTIALLY THAT HE HAD MISTER WALKER ABOARD, AND HE WAS TALKING TO HIM. I BELIEVE HE SAID THAT MISTER WALKER WAS WILLING TO SWIM A LINE THROUGH THE SURF TO HIS VESSEL. HE WANTED TO SAVE THE VESSEL HIMSELF."

<u>Page 8 line 19 through page 9 line 20</u>:

"Q. SO YOU, AS DISPATCHER, KNEW THAT CAPTAIN MIDGETT WAS GOING TO SEND MISTER WALKER WITH A LINE ASHORE?

A. I ADVISED HIM THAT I WOULDN'T DO IT, I'D WAIT FOR THE OTHER VESSEL, AND CAPTAIN MIDGETT TOLD ME THAT MISTER WALKER WAS INSISTENT, HE WANTED TO DO IT HIMSELF.

Q. DID YOU HAVE ANOTHER VESSEL IN ROUTE?

A. YES, I WAS PREPARING TO GET ANOTHER VESSEL IN ROUTE.

Q. WHAT VESSEL WAS THAT?

A. THE SEA TOW VESSEL "FLASH GORDON," AND THAT WOULD HAVE BEEN WITH, MORE THAN LIKELY, MYSELF, AND THE OTHER CAPTAIN, MARTY.

Q. WHEN DID YOU AND MARTY BOLSTER LEAVE THE SEA TOW OFFICE AND PROCEED TO THE AREA?

A. I DON'T RECALL THE TIME, BUT IT WAS DIRECTLY AFTER I RECEIVED A CALL FROM- NOT ONLY CAPTAIN MIDGETT ON THE PHONE, BUT OVERHEARD A CALL TO THE COAST GUARD THAT THE SEA TOW VESSEL WAS ON THE BEACH.

Q. AND SO Y'ALL HAD NOT PREPARED TO GET UNDERWAY UNTIL AFTER YOU HEARD THAT?

A. THIS WAS ALL IN THE SAME AMOUNT OF TIME. I WAS PREPARING TO GET UNDERWAY WHEN ALL THIS HAPPENED.

Q. BUT YOU ADVISED CAPTAIN MIDGETT NOT TO SEND A CIVILIAN WITH A LINE?

A. RIGHT. I ADVISED HIM NOT TO SEND A PERSON OTHER THAN A SEA TOW PERSON."

SUBMITTED WITHOUT PREJUDICE,

*Don Davis*

CAPT. DON W. DAVIS   NAMS - CMS



DON W. DAVIS
No.
133-521

DWD/kd
(03.1/leg)